[Cite as *Murphy v. Murphy*, 2019-Ohio-3454.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| JOAN M. MURPHY | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2018CA00161 |
| JOHN A. MURPHY, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of
                             Common Pleas, Domestic Relations
                             Division, Case No. 2016DR00112

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August 26, 2019

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

LORRIE FUCHS                          DOUGLAS BOND
3974 Wales Avenue NW                  116 Cleveland Ave. N.W., Suite 600
Massillon, OH 44646                   Canton, OH  44702

*Gwin, P.J.*

{¶1}   Husband appeals the October 9, 2018 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division, granting in part and denying in part his motion for modification and/or termination of spousal support.

*Facts & Procedural History*

{¶2}   Husband John Murphy and Wife Joan Murphy were married on October 13, 1990.  Wife filed a complaint for divorce on February 11, 2016.  After a two-day trial in January of 2017, the trial court issued a judgment entry and decree of divorce on February 6, 2017.  After considering the statutory factors in R.C. 3105.18, the trial court ordered Husband to pay spousal support to Wife for a period of ninety-six months, effective February 1, 2017, in the amount of $4,000 per month.  The trial court retained jurisdiction on matters related to spousal support.

{¶3}   Husband filed a motion to modify and/or terminate spousal support on January 31, 2018, seeking a modification and/or termination of spousal support based upon a substantial change in circumstances as it relates to the parties' income.  Attached to Husband's motion is his affidavit, which states he now has a complete record of his income for 2016 and 2017 which was not available at the divorce trial and that the updated information demonstrates his income is approximately twenty-five percent less than the amount set forth in the court's final decree and Wife's income is ten percent higher than the amount set forth in the court's final decree.

{¶4}   On February 20, 2018, the trial court scheduled Husband's motion for trial on April 11, 2018.  On April 5, 2018, Wife filed a motion to continue the trial and motion to compel.  On April 9, 2018, the trial court issued a judgment entry continuing the trial

and stating the trial would be rescheduled once Husband complied with the order to compel. Also on April 9, 2018, the trial court issued a judgment entry granting Wife's motion to compel and stating assignment should not reschedule the case for trial until Husband provided Wife with his 2017 tax return. Husband filed a notice of service of response to Wife's request for production of documents on April 13, 2018. On June 6, 2018, the trial court issued a notice scheduling Husband's motion for trial on August 13, 2018.

{¶5} The trial court conducted a trial on August 13, 2018 and August 20, 2018. At the trial, the following individuals testified: Husband, Wife, Vance Adams ("Adams") who works at a CPA firm and who completed the parties' tax returns for approximately ten years until 2016, and Richard Arnold ("Arnold"), the chair of the firm's finance committee at Husband's employer.

{¶6} Arnold testified the monthly draw for each partner is a tier system based upon partner activity. The firm calculates how many points each partner receives each year and places each partner in a slot. How many points each partner has and thus which slot the partner is in determines the amount of each partner's draw and also determines how much distribution the partner receives at the end of the month if there are additional profits. The points are based upon a number of factors, including working receipts, attorney billings, seniority, and hours billed. Arnold stated Husband's draw for 2018 is $64,000 and the additional profit portion of Husband's 2018 salary is anticipated to be $50,440. Arnold testified Husband's points have gone down, which is common for someone in his age group. Husband had 200 points in 2016, had 175 points in 2017, and has 150 points in 2018. On cross-examination, Arnold confirmed Husband made

$187,000 in 2012, $191,000 in 2013, $221,000 in 2014, $163,000 in 2016, and $135,000 in 2017.

{¶7}    Husband testified his only income is from the law firm where he works. When the trial court inquired of Husband about his decline in billable hours, Husband testified he goes to the office every day, he likes to work, he wants to work, he has a fiduciary obligation to his partners and his clients, he works as much as he can, and bills as much as he can.  As to 2017, Husband stated it was rough because he moved twice, which took its toll on him.  Husband contends his billable hours for his age are average to above average and he is doing well for his age.  His emotional condition leading up to the first trial was pretty bad, but has gotten better over time.  The divorce and the moving process took its toll on him and Husband testified, "[i]it sets the focus in the office some days.  You get more slippage in your bills when you're looking out the window."

{¶8}    On cross-examination, Husband confirmed in 2016 he was tied for second lowest billing partner in the firm and in 2017 he was the third lowest billing partner in his firm.  Husband agreed his billable hours have declined in the last four or five years, but testified this is normal for his age as his clients have declined because he is getting older. Husband stated he is in good health.  Husband agreed his compensation is largely based upon productivity, but denied his reduced production is voluntary or intentional.  Husband stated many of his clients are small corporations and he does not do corporate work, so he farms it out to other people and, "under the current system the way it's written that's to help the young pups that need the money I go down.  Am I going down…yes.  I'm billing down.   But $350,000 [in total yearly billing of clients] is not chump change.   I am

responsible for, as a lawyer, to clients and I'm giving them advice and I'm not not billing my time to not share the money with her. That's just false accusations."

{¶9} Wife testified that around the time she asked Husband for a divorce, he started working significantly less than he previously did. Wife did not notice any health problems or anything prohibiting him from going to work. Wife stated it appears as if Husband has decreased his income to avoid paying spousal support. It is Wife's position that Husband's income for 2017 is between $173,000 and $177,000 and Husband's three-year average of wages plus rental income is $188,000, while her three-year average is $78,000. On cross-examination, Wife stated her testimony at the first trial regarding the amount of her bonus was incorrect. Upon inquiry by the court, Wife testified her bonus for 2017 was $3,723, her bonus for 2016 was $3,245, and her bonus for 2018 is $10,551.

{¶10} Arnold stated partners can elect into health insurance and dental insurance, but they have to self-pay. Arnold confirmed Husband is getting a tax deduction for a portion of the premiums he pays for health insurance. Husband testified he went through most of 2017 without health insurance because he did not have the cash available to pay for it. Husband pays $425 in health insurance premiums per month and thus in his income sheet, he gave himself a credit for Wife's employer's share of her health insurance premiums. Wife pays $277 per month in health insurance premiums for herself and the parties' children. Wife stated Husband gets a $2,548 yearly tax deduction for self-employed health insurance.

{¶11} Wife testified her employer contributes $1,000 per year to her HSA account. That amount is not taxable and is not included in her gross income on her W2 form. Wife

utilizes the money in her HSA to pay bills for the parties' children who are in college. Wife voluntarily puts additional money into her HSA every year. Husband contends the $1,000 Wife's employer puts into her HSA is income that should count in the spousal support determination.

**{¶12}** Wife testified her employer, as part of her benefit package, pays a percentage of her pension and 401(k), but she does not receive it in income and does not pay taxes on it. Adams testified Husband's company does not contribute to his retirement accounts, whereas Wife's company puts some money into her pension fund. The company match to Wife's 401(k) is not taxable income, but is income that is considered deferred for her future benefit, such that the 401(k) account cannot be taken away from her, but it is not available income today. Adams stated Wife cannot get the money today and it is not tax-free income. Husband testified Wife's retirement account has grown substantially, partly because of her employer's contribution.

**{¶13}** Adams' employer prepared the tax return for Husband's rental property company, JAMS Properties, LLC ("JAMS"). The average yearly gross income for rents is around $50,000 for JAMS and the net amount is determined by deducting from the gross amount real estate taxes, mortgage interest, repairs, maintenance, professional fees, and operating expenses. On JAMS' tax return, the yearly net income for JAMS for the past three years is a loss of $100. Adams testified in 2017 Husband prepaid real estate taxes on each of his three rental properties in the amounts of $4,436.48, $3,214.51, and $2,384.92. In Adams' experience, this is something many of his clients did to receive a full tax deduction instead of a limited tax deduction. On the JAMS tax return, $15,000 is deducted from the gross income for depreciation, even though JAMS did not have a cash

outlay for that amount during the year. Adams stated the IRS permits the partnership to amortize the cost of an asset over the life of an asset and that is why the $15,000 is deducted for depreciation. Adams testified, "if you do not allow [for] depreciation then the tax return would have had a profit" and stated there is a difference between taxable income and whether the partnership had cash available to them during the year. Items paid out of cash for the year totaled approximately $27,205. Adams testified it was a "reasonable assumption" that if the court wanted to determine how much cash Husband had available to him in JAMS for 2016 and 2017 on average, it would be about $15,000.

{¶14} Husband testified JAMS does not make any income, it is essentially a break-even venture, and he and his partner have had to loan money to the company in the past because they have not had the money to do repairs and maintenance.

{¶15} The parties agreed to submit proposed findings of fact and conclusions of law by September 4, 2018. The parties both filed their proposals on September 4, 2018.

{¶16} The trial court issued a judgment entry on October 9, 2018. The trial court noted the parties were divorced on February 6, 2017, ending a twenty-six year marriage. The trial court found Wife's income since the divorce trial has increased by approximately $8,500 to $9,000. Further, the trial court agreed with Husband that an additional $1,000 should be included in calculating Wife's 2018 income because the money is available to Wife. The $1,000 is the amount Wife's employer paid to her HSA and which Wife uses to pay deductibles and co-pays for medical benefits. The trial court declined to include in Wife's 2018 income amounts Husband contends should be included because the benefits are not currently available to Wife and/or are not disposable funds. These include: Wife's employer's contribution to Wife's pension plan; Wife's employer's contribution to her

401(k); and Wife's employer's payment of her monthly health insurance and dental premiums;

{¶17} As to Husband's income, the trial court found his salary for 2018 is $64,000, with an additional $50,440 based upon profit distributions, for a total of $114,440. The trial court noted Husband's points have reduced because of his reduced productivity and Husband's 2018 income is a "substantial reduction" from his previous year's income. The trial court stated it was "to some extent disturbed by some evidence attributed to the reduction" of Husband's income, as although Husband testified he is present in his office about the same number of hours per week as in the past, his billable hours substantially decreased and his billable hours per week rank third from the bottom among twenty partners. The trial court noted while Husband's gesture of referring clients to young lawyers in the firm because they need to produce income to take care of their families is to be applauded, it is a maneuver which reduces his productivity and has an effect on the points used to calculate his bonus. The trial court found this to be a voluntary action. The trial court determined the evidence clearly demonstrates since Wife informed Husband of her intent to obtain a divorce, his billable hours have gone down. Further, there was no evidence this reduction in billable hours was due to any adverse health issues of Husband or loss of any of his major clients. The trial court concluded, based upon all of the evidence, Husband's reduction in billable hours is voluntary and Husband has the ability to increase his productivity based on his years as a professional law practitioner.

{¶18} The trial court also reviewed the evidence regarding Husband's income from Husband's 50% interest in JAMS, and determined JAMS was able to pay real estate taxes, paid shareholders for repayment of a loan, prepaid maintenance expenses, and

Husband had the benefit of real estate depreciation claimed by JAMS. The trial court concluded JAMS produces a disposable income for the benefit of Husband and its determination at the time of the divorce trial that JAMS provides Husband with yearly disposable income of $12,500 is correct.

{¶19} The trial court stated since it issued the spousal support order, Wife's income has increased and Husband's income has decreased. The trial court denied Husband's motion to terminate spousal support, finding that since the divorce trial, Husband has voluntarily made efforts to reduce his income. The trial court further determined, based upon the totality of all the evidence, effective October 1, 2018, Husband's monthly spousal support to Wife was reduced from $4,000 per month to $2,500 per month. The trial court stated it considered the provisions of R.C. 3105.18, including the parties' income from all sources, the parties' standard of living, age of the parties, the health of the parties, the length of the marriage (twenty-three years), the comfortable standard of living during the marriage, and all other factors set forth in R.C. 3105.18.

{¶20} Husband appeals the October 9, 2018 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶21} "I. THE TRIAL COURT ERRED IN SELECTING AN EFFECTIVE DATE TO REDUCE APPELLANT'S SPOUSAL SUPPORT WHEN THE DATE SELECTED BY THE COURT DID NOT COINCIDE WITH ANY EVENT IN THE LITIGATION AND THE CHANGED CIRCUMSTANCES WHICH GAVE RISE TO THE REDUCTION WERE EFFECTIVE ON JANUARY 1.

**{¶22}** "II. THE TRIAL COURT ERRED IN FAILING TO CONSIDER ALL ASPECTS OF INCOME AND MANDATORY DEDUCTIONS FROM INCOME WHEN CONSIDERING APPELLANT'S MOTION TO REDUCE OR ELIMINATE SPOUSAL SUPPORT.

**{¶23}** "III. THE TRIAL COURT ERRED IN ADJUSTING APPELLANT'S RENTAL INCOME AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶24}** In his first assignment of error, Husband argues the trial court committed error when it failed to make its order modifying spousal support retroactive. Husband contends the trial court's effective date does not coincide with any event in the litigation. We disagree with Husband.

**{¶25}** The cases cited by Husband in arguing he is entitled to have the order modifying support retroactive to the date his motion was filed are from the Second District Court of Appeals. We first note that the decisions by the Second District Court of Appeals are not binding on this Court. *Moore v. Michalski*, 5th Dist. Fairfield No. 17-CA-44, 2018 WL 3904257. This Court has previously held a trial court may make the modification order effective from the date the motion to modify was filed, but such determination is within the trial court's sound discretion. *Huston v. Huston*, 5th Dist. Coshocton No. 2013CA0030, 2014-Ohio-5654; *Sommers v. Sommers*, 5th Dist. Stark No. 2009CA00188, 2010-Ohio-1831. We have stated, "courts must be careful in making modifications retroactive because the retroactive reduction of spousal support which fails to consider the recipient's reliance upon or expectation of receiving constitutes substantial injustice and is an abuse of discretion." *Id.*

{¶26} As to Husband's argument that the effective date chosen by the trial court does not coincide with any event in the litigation, this Court has previously held a modification order date effective the next calendar month after the completion of the evidentiary hearing on all the issues has a relationship to the completion of the taking of evidence, and is thus not an abuse of discretion. *Sommers v. Sommers*, 5th Dist. Stark No. 2009CA00188, 2010-Ohio-1831. We similarly find in this case the trial court did not abuse its discretion in ordering the modification effective on October 1, 2018. The trial court concluded its taking of the evidence in August of 2018. The parties agreed to submit proposed findings of fact and conclusions of law by September 4, 2018. Both parties filed their findings of fact and conclusions of law on September 4, 2018. Approximately one month after the parties' filings, the trial court issued its ruling, modifying the order approximately forty days after the completion of the evidentiary hearing on all the issues and less than one month after the parties submitted their proposed findings of fact and conclusions of law.

{¶27} Additionally, though the Second District has held that, absent some special circumstance, an order of a trial court terminating spousal support should generally be retroactive to the date such modification was first requested, the Second District also has repeatedly made clear that is in the trial court's discretion as to whether it will make the modification order retroactive to the date the motion was filed. *Raska v. Raska*, 2nd Dist. Clark No. 2018-CA-25, 2018-Ohio-3921 (holding parties "may" be entitled to retroactive modification orders); *Cummings v. Cummings*, 2nd Dist. Montgomery No. 26594, 2015-Ohio-3686 (the trial court "may" make the modification order retroactive). The Second District has specifically stated, "the ability to order retroactive modification and a mandate

to make such an order are not the same things." *Cummings v. Cummings*, 2nd Dist. Montgomery No. 26594, 2015-Ohio-3686; *Goddard-Ebersole v. Ebersole*, 2nd Dist. Montgomery No. 23493, 2009-Ohio-6581.

**{¶28}** The concern expressed by the Second District is the substantial delay it frequently takes the trial court to dispose of motions to modify. However, there was no substantial delay in this case. The trial court set the trial on Husband's motion for two months after Husband filed his motion and the continuance of the trial was necessitated by Husband's lack of production of documents. Several days prior to the trial, Wife filed a motion to compel and motion to continue the trial, arguing Husband had not provided her with necessary discovery. The trial court issued an order continuing the trial, and stating the trial would be rescheduled once Husband complied with the order to compel. The trial court issued an entry scheduling the trial after Husband complied with the order to compel. After the trial, the parties agreed to the date on which to submit proposed findings of fact and conclusions of law and the trial court issued its decision the next month after the parties submitted their proposals.

**{¶29}** Upon review, we find no abuse of discretion in the trial court's decision not to make the modification order retroactive.

**{¶30}** Husband's first assignment of error is overruled.

II.

**{¶31}** In his second assignment of error, Husband contends the trial court committed error when it failed to consider as income benefits that Wife's employer pays for her and when it failed to deduct certain expenses from Husband's income.

**{¶32}** Decisions regarding the modification of spousal support are reviewable under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). The burden of establishing the need for modification of spousal support rests with the party seeking modification. *Weddington v. Weddington*, 5th Dist. Licking No. 10CA00023, 2010-Ohio-4967.

**{¶33}** As an appellate court, we are not fact-finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). The trial court is vested with the authority to assess the credibility of the witnesses and is free to believe all, some, or none of the witness testimony. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Additionally, the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

**{¶34}** Husband specifically argues the trial court failed to consider the implications of FICA tax due to Husband's self-employment, failed to consider the portion that Wife's employer pays for contributions to her pension and 401(k) plans, and the trial court committed error by not considering other employee benefit contributions by Wife's employer as part of Wife's income, such as her monthly health insurance premium and dental insurance premium. We disagree with Husband.

**{¶35}** In this case, there was no evidence presented that Wife could control the deposits to her pension or 401(k) so that she could convert them to disposable income. *Beiers v. Phillips,* 5th Dist. Licking No. 08CA0127, 2009-Ohio-3278. Adams testified Wife's employer's contribution to her 401(k) cannot be taken away from her, but it is not income that is available to her today and it is not tax-free income. As to the health insurance premiums, both Arnold and Wife testified Husband is getting a tax deduction for a portion of the premiums he self-pays for health insurance. This is not a case where there is evidence that the cost of Husband's health insurance will consume a large portion of his income, particularly considering the tax deduction he receives for it. The trial court did give Husband credit for the amount Wife's employer puts into her HSA because it reasoned this money can be utilized by Wife to pay her expenses.

**{¶36}** Additionally, this Court has previously stated, "there is no express requirement that the domestic relations court's order granting or denying a motion to modify spousal support order reexamine in toto the factors listed in R.C. 3105.18(C)(1) that apply to an initial determination of spousal support." *Skerness v. Skerness*, 5th Dist. Coshocton No. 2015CA0002, 2015-Ohio-3467. In this case, Wife is working for the same employer now as when the trial court made its original spousal support order and there was no evidence presented that her employer contributes any different amount to her pension and 401(k) plans than at the time of previous order or that Wife's employer pays any different amount of her health insurance and dental insurance premiums. Similarly, there was no evidence presented that the FICA tax paid by each of the parties has changed since the divorce decree.

{¶37} At the time of the divorce trial, the parties agreed to the division of the retirement accounts and agreed to the amounts contained in them. In the original decree, dated February 6, 2017, the trial court stated $4,000 per month was reasonable spousal support, based upon all the evidence and statutory factors, including the income of the parties from all sources and the retirement benefits of the parties. As noted by the trial court, the change of circumstances is the amount of Wife's bonuses and the speculative nature of Husband's 2017 income, which the trial court specifically took into consideration, along with the other factors in R.C. 3105.18, to grant Husband's motion to modify spousal support to $2,500 per month. The trial court in this case stated it considered all the relevant factors of R.C. 3105.18 in determining the modified amount of $2,500 per month. Upon review of the record, we find no abuse of discretion in the trial court's determination.

III.

{¶38} In his third assignment of error, Husband argues the trial court abused its discretion in adjusting Husband's rental income and in imputing any rental income to him because his rentals have no income. Husband specifically contends the trial court committed error when it included in the amount for rental income amounts for depreciation, prepaid real estate taxes, and maintenance fees. We disagree with Husband and find no abuse of discretion by the trial court.

{¶39} In the initial divorce decree when the trial court computed Husband's income, it included in his yearly income approximately $12,500 from rental income. Though Husband contends in his motion to modify that perhaps the trial court was in error in reaching that conclusion, Husband did not appeal the trial court's determination from the initial divorce decree. Additionally, though Husband contends the trial court abused

its discretion in adjusting or recalculating Husband's rental income, at the time of the initial divorce trial, the trial court found Husband's 50% interest in JAMS provided Husband with a disposable income of about $12,500 per year. In the judgment entry granting Husband's motion to modify and denying his motion to terminate spousal support, the trial court found JAMS "does produce a disposable income for the benefit of [Husband] and that the benefit to [Husband] made at the time of the divorce trial is approximately correct." Thus, there was no adjustment of the rental income amount from the initial trial.

{¶40} Additionally, Adams testified the JAMS tax returns for the past three years shows a net loss of $100 each year. However, Adams also testified that if he did not allow for depreciation, the JAMS tax return would have shown a profit. Adams stated it would be a reasonable assumption that if the court wanted to determine how much cash Husband had available to him for 2016 and 2017 on average for rental income, it would be about $15,000. Husband testified JAMS does not make any income and is essentially a break-even venture. The trial court is vested with the authority to assess the credibility of the witnesses and is free to believe all, some, or none of the witness' testimony. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶41} Husband's third assignment of error is overruled.

{¶42} Based on the foregoing, Husband's assignments of error are overruled.

{¶43}  The October 9, 2018 judgment entry of the Stark County Court of Common

Pleas, Domestic Relations Division, is affirmed.

By Gwin, P.J.,

Hoffman J., and

Delaney, J., concur